EMPIRE HEATING CORPORATION, Plaintiff, *v.* JAMES STEWART & Co., INCORPORATED, Defendant.

Supreme Court, New York County, March 9, 1931.

*E. Glueck*, for the plaintiff.

*Evans, Hunt & Rees* [*H. D. Moore* of counsel], for the defendant.

MILLER, J. This action was brought by the plaintiff as assignee of a subcontract entered into between its assignor, one Goldstein, doing business under the name of The Federal Heating Company, and defendant, the general contractor. The contract provided against assignment without consent. The plaintiff seeks to recover an unpaid balance of $2,408.57 for work and labor performed after the assignment in September, 1927. Defendant pleads as a setoff the sum of $1,552.20, the amount paid by it to one Maneely for materials furnished to plaintiff's assignor in July, 1927. In November, Maneely duly filed a mechanic's lien for the price of the materials.

Shannon, the president of the plaintiff corporation, had been superintendent for the assignor. He arranged with defendant for the assignment of the subcontract to the plaintiff and secured a separate contract of assignment to which defendant gave its consent. This contained a promise by the subcontractor that he would remain liable for unpaid claims. This assignment was consummated after September fifteenth, when time for performance under the terms of the subcontract had expired. Notice of the assignment was never filed in accordance with section 15 of the Lien Law (as amd. by Laws of 1925, chap. 624).

The promise of the assignor to pay his debts incurred in performance of the subcontract lacked consideration, as his own responsibility remained and plaintiff did not become personally liable for the debts of the assignor. (*Martin* v. *Flahive*, 112 App. Div. 347, 350.) Instead, in undertaking to complete, plaintiff became trustee for Maneely, the materialman. (Id. 351.) Under such circumstances, it could not in good faith insist that the promise of the assignor relieved the fund to which Maneely was entitled to look for satisfaction of his claim. (*Armstrong* v. *Chisolm*, 99 App. Div. 465, 469.)

The fact that defendant permitted completion after time for performance had expired did not constitute a waiver. (*Mikolajewski* v. *Pugell*, 62 Misc. 449.)

Plaintiff's further contention that section 15 of the Lien Law

required the materialman to prosecute his lien to judgment, and that in the absence of such prior adjudication defendant was a volunteer in making payment, is equally untenable. As section 15 stood when this controversy arose (Laws of 1925, chap. 624), and as it has since been amended (Laws of 1929, chap. 515), no provision is made that the lien of the claimant must be reduced to judgment. The rights of all parties are protected by requiring the owner or contractor to prove affirmatively the validity of the claim which he discharges. (*Simpson* v. *Sisters of Charity*, 108 Wash. 82; *Bagaglio* v. *Paolino*, 35 R. I. 171; 44 L. R. A. [N. S.] 80; *Wilson* v. *Nugent*, 125 Cal. 280; *Nason Mfg. Co.* v. *Adams*, 76 Misc. 590; affd., 155 App. Div. 915.)

In my opinion, Maneely became a lienor under section 15 of the Lien Law when he filed his notice in November, 1927. Defendant has established affirmatively the validity of Maneely's claim, the filing of the notice of lien by this claimant within four months thereafter, and the non-payment of the claim. The plaintiff offered no testimony in contradiction. Since it failed to file the notice of assignment, plaintiff's claim to the funds due or payable under the subcontract became subordinate to Maneely's claim upon the filing of his lien. (*Edison Electric Co.* v. *Frick*, 221 N. Y. 1, 7.)

Article XIII of the contract between plaintiff's assignor and defendant provides as follows: " The Sub-Contractor agrees to indemnify and save the Contractor and the Owner harmless from any costs, expense, attorney's fees, loss or damage resulting from the filing of any liens by any person under it.

" In case the Contractor shall receive notice of any claim for labor or material furnished to the Sub-Contractor in carrying out this contract, while money remains in the hands of the Contractor, the Contractor may, at its option, withhold a sufficient sum to meet any such claim or claims, until the matter shall be adjusted between the Sub-Contractor and such claimant or claimants; it being however understood that nothing herein contained shall be construed as impairing the right of the Contractor to hold the Sub-Contractor or its securities liable on the bond furnished by the Sub-Contractor for any breach of the same."

Plaintiff was in no way prejudiced by the payment of the amount of the lien by the defendant, as that amount could have been withheld under article XIII of the contract.

In construing the idemnification clause of the contract above quoted the doctrine of *ejusdem generis* has no application.

It has been recognized that claimants have unperfected rights before they file their liens. (*Armstrong* v. *Chisolm, supra.*) It has

been held that owners may pay laborers and materialmen whose claims are thus inchoate. (*Nason Mfg. Co.* v. *Adams, supra.*) Since these obligations may be discharged without adjudication, the words " loss or damage " should not be construed as generally descriptive of the specific terms " costs, expenses and attorneys' fees." " Words of general description do not follow words of particular description in relation to the same subject-matter and the rule of *ejusdem generis* has no application." (*Cohen* v. *Bass, Inc.*, 246 N. Y. 270, 276.)

Verdict is directed for plaintiff in the sum of $856.37, being the difference between the amount claimed by plaintiff and the amount paid by defendant in satisfaction of Maneely's lien, together with the interest thereon, which amounts to $155.